IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |
|---|---|
| NORFOLK SOUTHERN RAILWAY COMPANY,    )<br>                                                                      )<br>                            *Plaintiff,*                     )<br>                                                                      )<br>            v.                                                   )<br>                                                                      )<br> ZAYO GROUP LLC,                                  )<br>                                                                      )<br>                            *Defendant.*                  )<br>                                                                      )<br>                                                                      ) | Civil Action No. 1:21-cv-1299<br>Hon. Liam O'Grady |

## **MEMORANDUM OPINION**

**Introduction**

This matter comes before the Court on the Plaintiff's Motion to Compel an Arbitration Award in accordance with 9 U.S.C. §9. Dkt. 17. The Motion has been fully briefed by the Parties and oral arguments have been heard by the Court. The matter is now ripe for resolution.

**Background**

The Plaintiff, Norfolk Southern Railway Company ("Norfolk Southern"), is a Virginia corporation with its principal place of business in Virginia. Dkt. 19 at 3. At the heart of this current dispute is a 24.7-mile corridor that runs between Alexandria, Virginia and Manassas, Virginia on which Norfolk Southern operates a railroad and its adjoining facilities. *Id.* at 4. Norfolk Southern has leased a small duct, which runs parallel to the railway corridor, to the

1

Defendant, Zayo Group LLC ("Zayo"). Zayo is a telecommunications company that owns and operates a fiber optic cable within the duct. *Id.* In 1999, the Parties entered into an agreement ("the lease") that governs the rental of the duct. *Id.* The lease granted an initial term of 20 years of occupancy to Zayo and granted Zayo an option to renew the lease for an additional term of 10 years. *Id.* The lease created an appraisal process to calculate an adjusted rental value for the new ten-year term which is outlined by a clause in the lease:

> Rental for the Renewal Term(s) (the "Adjusted Rental") shall reflect the fair market value of this Lease, which shall mean the fair rental value of the Leased Facilities and the rights granted herein for the Renewal Term for the uses permitted herein; provided, however, that in no event shall the Adjusted Rental be less than the Rental (or Adjusted Rental) as adjusted pursuant to Section 4(c) in effect immediately prior to a Renewal Term. Lessor initially shall propose the Adjusted Rental and shall notify Lessee thereof during the last six (6) months of the Initial Term or preceding Renewal Term. If Lessee objects to Lessor's proposed Adjusted Rental, Lessee at its sole cost will obtain and submit to Lessor an appraisal by an MAI member within sixty (60) days of Lessor's notice. If Lessor disagrees with Lessee's appraisal, Lessor at its sole cost will obtain a second appraisal by an MAI member. If Lessee's and Lessor's appraisers cannot reach agreement, they will select, and Lessor and Lessee will jointly compensate, a third appraiser similarly qualified, and the three shall determine the Adjusted Rental within sixty (60) days of the third appraiser's selection, which determination shall be final and binding. During the period of any appraisal(s), Lessee shall continue paying the Rental (or Adjusted Rental) in effect during the Initial Term or the preceding Renewal Term, and upon final determination of the Adjusted Rental, shall pay any excess due.

Dkt. 1-2 at 2. When Zayo renewed the term of the lease in 2019, the Parties proceeded according to this provision of the contract. Dkt. 19 at 6-7. The two appraisers retained by each Party suggested two values for the rent and those values differed by more than two million dollars. *Id.* After being unable to resolve the disparity, the Parties formed a panel of three appraisers with one appraiser retained by each Party and the third appointed with the consent of both Parties. *Id.* at 8. After a vote, the panel assessed a rental value of $2,340,000 with the appraiser retained by

2

Zayo as the dissenting vote. *Id.* at 8. Norfolk Southern has subsequently issued invoices based on this rental value which Zayo has refused to pay. *Id.*; *see also* Dkt. 18-6 (invoices).

Norfolk Southern eventually filed a complaint in the Norfolk Division of the Eastern District of Virginia in May of 2021 that seeks a declaratory judgment and alleges breach of contract. Dkt. 1. Eventually, this complaint--along with a related case--were transferred to this Court.[1] *See* Dkt. 38. Norfolk Southern has moved to confirm the award of the adjusted rental value pursuant to the Federal Arbitration Act. 9 USC §1 *et seq.*

**Discussion**

The Federal Arbitration Act applies to "a written provision in… a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction,…" 9 USC §2. A contract's written provision will invoke the Federal Arbitration Act when the clear language of that contract provision "manifests an intention by the parties to submit certain disputes to a specified third party for binding resolution." *Elox Corp. v. Colt Indus., Inc.*, 952 F.2d 395, (4th Cir. 1991) (per curiam) (quoting *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 830 (2d Cir. 1988); *ref, Butler Prods. Co. v. Unistrut Corp.*, 367 F.2d 733, 734-736 (7th Cir. 1966)).

Zayo advances several arguments as to why the Court should not enforce the Arbitration award proposed by Norfolk Southern.[2] *See* Dkt. 31. Zayo argues that the appraisal procedure--as defined by the provisions in the lease--was not an arbitration. *Id.* at 4. Zayo argues that Virginia

---

[1] The related case is a condemnation proceeding that was initiated by Zayo in front of the Virginia State Corporation Commission that was removed to the federal district court. Civil case no. *Zayo Group, LLC v. Norfolk Southern Railway Company*, 1:21-cv-1300

[2] Both Parties now agree that this Court is the proper venue for the current proceedings. Dkt. 58.

state law should be used to interpret the contract. *Id.* at 8. Zayo also argues that the Court does not have power to enforce an Arbitration award. *Id.* at 9. Finally, Zayo argues that a decision by the panel of appraisers requires unanimous consent. *Id.* at 31.

**1. The Appraisal Procedure**

Zayo argues that an appraisal process is distinct from an arbitration. *Id.* at 4. Zayo relies on the decisions of several appellate courts that considered the action of a single appraiser distinct from an arbitration that would be governed by the Federal Arbitration Act. *Id.* at 5. There does not appear to be a Fourth Circuit appellate case that directly addresses the issue.

Other district courts within the Fourth Circuit have found that a contract provision is considered an arbitration when there is clear intent by the parties to submit review of the dispute to the binding decision of a third party. *Liberty Mut. Group, Inc. v. Wright*, 2012 U.S. Dist. LEXIS 29414 at *16 (D. Md. March 5, 2012) (quoting *McDonnel Douglas*, 858 F.2d at 830-831). The district court in *Wright* went on to hold that:

> When viewed on the whole, however, the entire appraisal process does constitute "arbitration." The parties agreed to select "competent appraisers" if they could not agree on the amount of loss, and their agreement provided a fixed procedure for those appraisers to follow in setting the amount of loss. Submission of the dispute to the appraisers will ultimately settle the issue, as the appraiser - perhaps through involvement of the umpire – will reach a binding decision through that process.

*Id.* at *19-20 (citations omitted). Other district courts in this circuit have found that an appraisal process is an arbitration when the process of "dispute resolution sufficiently resembles 'classical arbitration' to fall within the purview of the Act." *Wilbert, Inc. v. Homan*, 2013 U.S. Dist. LEXIS 170237 at *6-7 (W.D.N.C. December 3, 2013) (The district court found the appraisal was an arbitration because there was no review, the decision was binding and the appraiser was

referred to as independent). The reasoning of the district courts is persuasive for the proposition that a dispute process designated as an appraisal can be considered an arbitration within the scope of the Federal Arbitration Act.

The language within the lease explicitly defines the decision of the three appraisers as "final and binding." Dkt. 1-1 at 2. The third appraiser appointed was selected with the assent of both Parties and acts independently of either party. Although the third appraiser is not specifically referred to as an "umpire," the language of the contract demonstrates that the third appraiser was intended to resolve the dispute between the initial two appraisers. Accordingly, the lease definitively outlines a process to arrive at the value of the adjusted rent and the resulting calculation is final and binding as there is no provision for review in the contract.

The Federal Arbitration Act reflects a congressional intent to codify a national policy in favor of dispute resolution through arbitration. *Dillon v. BMO Harris Bank, N.A.*, 787 F.3d 707, 712 (4th Cir. 2015) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985)). When there are doubts regarding whether an issue is arbitrable, the Court will resolve those doubts in favor of arbitration "whether the problem at hand is the construction of the contract language itself..." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Therefore, to the extent that there is any ambiguity resulting from the designation of an arbitration as an appraisal, there remains a strong presumption that the dispute is an arbitration. In consideration of this presumption and the language of the contract provision itself, the Court finds the Parties intended to resolve the dispute over the adjusted rental value through an arbitration process.

## 2. The Application of Federal Common Law versus Virginia State Law.

Zayo has argued that the definition of arbitration must be construed under Virginia contract law because the question is resolved based on contract interpretation. Dkt. 31 at 8. There is a circuit split on whether to define arbitration based on federal common law or Virginia state law. *Wilbert, Inc.*, 2013 U.S. Dist. LEXIS 170237 at *4-5. (collecting cases) (The district court noted that the Fifth and Ninth Circuits have applied state law while the First, Second and Tenth have applied federal common law). The district courts in *Wilbert Inc.* and *Wright*, discussed above, have both applied federal common law after noting that the issue has not been directly addressed by the Fourth Circuit. These district courts found that there is a national interest in having a singular definition of arbitration and it is preferable to interpret terms under Federal common law. Despite Zayo's contention, the decision of the Court would remain the same under the application of either Virginia state law or general Federal contract law.

It appears Zayo argues that if the Court were to interpret the lease provision as an arbitration clause then this interpretation would require the addition of terms to the contract that were not intended to be added by the Parties, in contradiction of Virginia contract law. Dkt. 31 at 8. As discussed above, a contract provision does not need to include the word 'arbitration' verbatim to be brought within the ambit of the Federal Arbitration Act. *See Elox Corp.*, 952 F.2d at 6-7 (Contract language that submitted a dispute to a national accounting firm represented a clear intent to arbitrate disputes over the calculation of the value of an asset purchase). It is not clear from Zayo's opposition memorandum how interpretation of the disputed provision would change under Virginia contract law versus Federal common law. *See McNeil v. Haley south, Inc.*, 2010 U.S. Dist. LEXIS 95658 at *11-18 (E.D. Va. September 13, 2010) (An agreement to

arbitrate was not void under principles of Virginia law because the contract did not contain vague terms or a patent ambiguity in the meaning of the terms); *Csukardi v. Platinum Corral, LLC*, 2017 U.S. LEXIS 21772 at *15 (E.D. Va. February 16, 2017) ("Here, however, Plaintiff has merely offered the legal conclusion that the contract is missing material terms without explaining how the terms were material or even, in some cases, how the terms were missing.") As discussed above, the plain language of the contract indicates the Parties' intent to submit the dispute to a third party (the appraisers) without further review. Based on the plain language of the lease without the inclusion of any additional terms, the lease demonstrates an intent to arbitrate the dispute over the value of the adjusted rental rate. *See Mey v. DIRECTV, LLC*, 971 F.3d 284, 294 (4th Cir. 2020) ("But we have time and again, emphasized that we must interpret and enforce the words of the particular arbitration provision to which the parties agreed.")

### 3. The Power to Enforce an Arbitration Award

Zayo argues that the Court lacks the power to enforce an arbitration award based on the language of Section 9 of the Federal Arbitration Act. Dkt. 31 at 9. This section of the Federal Arbitration Act states, "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration...any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order..." 9 USC §9. Zayo argues that the lease does not contain language contemplating the enforcement of the award. The Fourth Circuit has held the enforcement of an arbitration clause is permissible based on contractual language that is not exact or specific. *Qorvis Communs. LLC v. Wilson*, 549 F.3d 303, 309 (4th Cir. 2008) (A reference to an

arbitration indicates the intent to consent to enforcement of the Award) (*ref, Rainwater v. National Home Ins. Co.*, 944 F.2d 190, 192-194 (4th Cir. 1991).

In *Qorvis*, the Fourth Circuit looked at the language of the contract provision, the rules incorporated in the provision, and the conduct and sophistication of the parties to decide if any award was enforceable. 549 F.3d at 311. In the current case, the language in the lease refers to the decision of the appraisers as "final and binding."[3] Dkt. 1-1 at 2. The appraisers were all required to be accredited according to a national appraisal standard agreed to by the parties. *Id.* Further, it is undisputed that both Parties participated fully in every step of the appraisal process. Both Parties are sophisticated corporations that agreed to the terms of the lease. Under controlling precedent from the Fourth Circuit, the designation of the arbitration process as final and binding within the lease is sufficient to indicate the Parties have consented to the enforcement of the arbitration decision. *Rainwater*, 944 F.2d at 194 (A contract that did not designate an arbitration as "final and binding" --distinct from the lease in the present case-- could still be enforced because of references to arbitration). The language of the contract, the rules of the proceeding, the designation of the appraisal proceeding as "final and binding," and the conduct and sophistication of the Parties all show that the arbitration in the lease is enforceable in accordance with 9 USC §9.

---

[3] Zayo references an Eighth Circuit decision that has been contemplated and not adopted by the Fourth Circuit to argue that the inclusion of the terms "final and binding" does not clearly indicate the intent of the Parties to be bound by the Court. *See PVI, Inc. v. Ratiopharm GmbH*, 135 F.3d 1252, 1254 (8th Cir. 1998); *cf., Qorvis*, 549 F.3d at 311. This out of circuit decision is not controlling on the Court's decision as to the enforceability of the award.

### 4. The appraisal panel was not unanimous

Zayo argues that "it is clear that the parties did not intend to bind themselves to new rental rate for a new lease term unless all of the appraisers concurred in that rental rate." Dkt. 31 at 12. Zayo argues that this is based on the language of the contract that states "the three shall determine the Adjusted Rental within sixty (60) days of the third appraiser's selection." *Id.* at 12-13. Norfolk Southern argues that the language of the contract does not require a unanimous vote because "the three" should not be read as "all three." Dkt 32. at 12.

Norfolk Southern cites several district court decisions that have resolved similar arguments. Dkt. 32 at 12-13. *See e.g. Robey v. AMTRAK*, 2020 U.S. Dist. LEXIS 96964 at *10 (E.D. Va. June 2, 2020) ("As is customary, a three-doctor panel, with a neutral doctor appointed by both parties, is often useful to resolve a split decision. If a three-doctor panel required the decision of only one physician, there would be no need in having the other two doctors on a panel.") To adopt Zayo's interpretation of the arbitration provision would render the appointment of the third appraiser superfluous and that contract provision meaningless. Therefore, an interpretation of the contract that requires the appraisal panel's decision to be unanimous is inconsistent with the plain language of the contract.

As discussed above, the Court has found that there was an intent to arbitrate the current dispute. After this finding, the Court does not make decisions as to the "procedural aspects of the arbitration itself" which is "presumptively for the arbitrator to decide." *Davis v. ECPI College of Tech., L.C.*, 227 Fed. Appx. 250, (4th Cir. 2006) (internal quotations omitted) (quoting *Dockser v. Schwartzberg*, 433 F.3d 421, 425-426 (4th Cir. 2005) (The decision to include one or three arbitrators was a procedural question which did not affect the validity of the arbitration));

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) ("Procedural questions which grow out of the dispute and bear on its final disposition are presumptively *not* for the judge, but for an arbitrator, to decide.") (internal quotations and citations omitted; emphasis in original). The decision to return a finding based on a majority vote rather than a unanimous vote was a procedural aspect of the arbitration. As such, the method the appraisers used to reach their final decision does not affect the validity or enforceability of the arbitration process.

**Conclusion**

The appraisal is an arbitration based on the language of the contract. The arbitration is valid, final, and binding. Accordingly, enforcement of the award is proper under the provisions of the Federal Arbitration Act. 9 USC §1 *et seq*. Therefore, the Motion to enforce the arbitration award will be **GRANTED**. The decision of the appraisers is therefore confirmed, and judgment will be entered in accordance with that award by an appropriate Order to be issued with this Memorandum Opinion.

March 23, 2022
Alexandria, Virginia

Liam O'Grady
United States District Judge